# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *versus* | : | CRIMINAL NO. 12-73-BAJ-SCR |
| | : | |
| ZAHID IMRAN, M.D. | : | |

## PLEA AGREEMENT

1.

The Office of the United States Attorney for the Middle District of Louisiana and the Fraud Section of the Criminal Division of the Department of Justice (hereinafter referred to as the "Department of Justice"), by and through the undersigned counsel, and the above-named defendant, ZAHID IMRAN (hereinafter referred to as the "defendant"), agree that the defendant will plead guilty to Count One of a Superseding Indictment charging the defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and agrees to admit to the forfeiture allegations contained in the Superseding Indictment.

2.

The Department of Justice and the defendant agree that, if the Court accepts the guilty plea, the Department of Justice will move to dismiss Counts Eight, Nine, and Ten of the Superseding Indictment in Criminal No. 12-73-BAJ-SCR as to this defendant at the time of sentencing, and no additional charges related to the violations contained in the Superseding Indictment will be brought against the defendant in this district.

3.

If the defendant breaches this Plea Agreement by failing to plead guilty as set forth in Paragraph 1 of this Plea Agreement, this Plea Agreement, the statement of facts contained in Paragraph 8 of this Plea Agreement, and the defendant's admission to such statement of facts may be used against the defendant in any criminal trial and the defendant may be prosecuted for any offense covered by this Plea Agreement. The defendant's plea of guilty may not be withdrawn.

4.

The defendant agrees to fully and truthfully complete the financial statement provided to him by the Department of Justice and to return the financial statement to the undersigned attorneys for the United States within ten (10) days of this agreement being filed with the Court. Further, upon request, he agrees to provide the Department of Justice with any information or documentation in his possession regarding his financial affairs and agrees to submit to a debtor's examination when requested. The defendant agrees to provide this information whenever requested until such time as any judgment or claim against him, including principal, interest, and penalties is discharged or satisfied in full. This information will be utilized to evaluate his capacity to pay the government's claim or judgment against him, whatever that claim or judgment may be.

5.

The defendant also agrees to assist the Department of Justice in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in the assets that the defendant has agreed

2

to forfeit, and any other assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others to his knowledge have accumulated as a result of illegal activities. Such assistance will involve an agreement on the defendant's part to the entry of an order enjoining the transfer or encumbrance of assets which may be identified as being subject to forfeiture, including but not limited to those specific real and personal properties set forth in the forfeiture allegations of the Indictment. Additionally, the defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to the Department of Justice, upon request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property. To the extent the assets are no longer within the possession and control or name of the defendant, the defendant agrees that the United States may seek substitute assets within the meaning of 21 U.S.C. § 853.

6.

The defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by Title 18, United States Code, Section 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under Title 28, United States Code, Section 2255, and any modification of sentence pursuant to Title 18, United States Code, Section 3582(c)(2). The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of the statutory maximum; (b) any punishment that is an upward departure pursuant to the guidelines; and (c) any punishment that is above the guidelines range calculated by the Court.

3

Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel.

7.

The defendant understands that, as a result of this Plea Agreement, he could receive a maximum sentence of not more than ten (10) years imprisonment. In addition to a term of imprisonment, the defendant may be fined $250,000, or twice the gross gain or gross loss derived or resulting from the offense, whichever is greater. The Court must also order restitution in accordance with law. In addition, the Court must impose a special assessment of $100, which the defendant agrees to pay at the time of sentencing. The defendant understands that, if the Court imposes a term of imprisonment, he may also receive a term of supervised release after imprisonment of not more than three (3) years. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment for a term of two (2) years, without credit for any time already served on the term of supervised release. The defendant understands that the Court, while not bound to apply the Sentencing Guidelines, must consult the guidelines and take them into account when sentencing.

4

8.

The United States and the defendant stipulate, for purposes of Rule 11(b)(3) of the

Federal Rules of Criminal Procedure and pursuant to Section 6B1.4 of the United States

Sentencing Guidelines, to the following factual basis:

Psychcare of Louisiana, LLC dba Shifa Community Mental Health
Center ("Shifa"), was a Louisiana Limited Liability Company, started in 2002,
and headquartered in Baton Rouge, Louisiana. The defendant, ZAHID
IMRAN, M.D. ("IMRAN"), served as Shifa's Medical Director. IMRAN and
Hoor Naz Jafri ("Jafri") also owned and operated a second community mental
health center in Baton Rouge called Serenity Center, LLC ("Serenity"). Jafri
and others, including IMRAN, also owned a similar center in Houston called
Shifa CMHC of Texas, LLC ("Shifa Texas"), although IMRAN was not
involved in Shifa Texas' daily operations. Collectively, the Shifa facilities
purportedly provided Partial Hospitalization Programs ("PHPs"). The
treatment program of a PHP closely resembles that of a highly structured,
short-term hospital inpatient program, but it is a distinct and organized
intensive treatment program that offers less than 24-hour daily care.

From in or around 2005 through October of 2011, IMRAN, Jafri,
Dogan, and many of the Shifa facilities' owners, managers, and employees,
engaged in a scheme to commit health care fraud, by, among other things,
submitting reimbursement claims to Medicare for services that the Shifa
facilities had not actually provided. The scheme was accomplished through
the following means:

a.      Jafri, along with Roslyn F. Dogan and others, would recruit
Medicare beneficiaries to be placed at the Shifa facilities.

b.      The Shifa facilities had a practice of admitting patients who
arrived at the facility who were covered by Medicare regardless of whether
PHP services would be appropriate for such patients. As part of that practice,
IMRAN would admit patients to the Shifa facilities, even in circumstances
where another treating psychiatrist had determined that the patient did not
qualify for PHP services and that such services were not medically necessary.

c.      IMRAN would sign false documents making it appear that he
had provided medical treatment to PHP patients when he had not provided the
treatment reflected in the records. For instance, in October of 2009, IMRAN
completed and signed various records that falsely indicated that he had seen
and provided services to a patient, T.C., on or about October 10, 2009. In fact,

5

IMRAN was out of the country on the date reflected in the records, and he had not provided any services to T.C. on that date. As IMRAN knew, his false entries in these and other records would facilitate false claims to Medicare.

d.     IMRAN, Jafri, Dogan, and others would engage with other co-conspirators to falsify additional documents, including patient treatment notes and attendance records, for the purpose of making it appear that patients received PHP treatments at the Shifa facilities that they did not receive.

e.     Based in part on the false documentation, the Shifa facilities, through Jafri, Dogan, and others would cause claims to be submitted to Medicare for PHP services and psychiatric services purportedly provided at the Shifa facilities, services which were not medically necessary and had not actually been provided.

In total, during the course of the conspiracy outlined above, the Shifa facilities submitted claims to Medicare totaling approximately $258,582,075. A significant portion of these claims was fraudulent, either because (1) the Shifa facilities had not actually provided the services reflected in the claims, (2) the services were not medically necessary or the beneficiaries otherwise did not qualify for the services, and/or (3) the beneficiaries had been induced to come to Shifa by the payment of illegal kickbacks.

The defendant understands that the Court is not bound by this stipulation.

9.

The United States and the defendant stipulate, pursuant to Section 6B1.4 of the United States Sentencing Guidelines, that the proper calculation of loss pursuant to 2B1.1 of the United States Sentencing Guidelines based on the defendant's participation in the conspiracy and scheme and artifice is more than $50,000,000 but not more than $200,000,000. The defendant understands that the Court is not bound by this stipulation. The parties reserve their respective rights to make arguments to the United States Probation Office, and to the Court at a sentencing hearing, regarding any sentencing-related adjustments pursuant to the United States Sentencing Guidelines.

6

10.

The United States and the defendant agree that if the defendant's offense level prior to the operation of Section 3E1.1(a) of the United States Sentencing Guidelines is sixteen (16) or greater, and if the defendant complies with the provisions of Section 3E1.1(b) and all terms of this Plea Agreement, including but not limited to the timely submission of the financial statement referenced in paragraph 4, the United States will move, pursuant to Section 3E1.1(b), to decrease the defendant's offense level by one additional level.

11.

The defendant and the Department of Justice agree, pursuant to Title 18, United States Code, Section 3663(a)(3), that the Court will order full restitution for the defendant's conduct, in an amount to be determined by the Court.  The parties specifically agree that the Court shall not be limited to the count of conviction in determining and ordering full restitution.

12.

Pursuant to Rule 11(c)(3)(A) and 11(c)(5), Federal Rules of Criminal Procedure, the Court may accept or reject this Plea Agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the Presentence Report.  If the Court rejects the Plea Agreement, the Court, on the record, will so inform the defendant and advise the defendant that the Court is not bound by the Plea Agreement.  The Court will give the defendant an opportunity to withdraw the plea and will advise the defendant that, if the plea is not withdrawn, the disposition of the case may be less favorable to the defendant than contemplated by the Plea Agreement.

7

13.

The defendant understands and acknowledges that as a result of his guilty plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete all necessary documents provided by any department or agency of the federal government, including, but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid. The defendant understands that this Plea Agreement, including this paragraph, is not intended to affect or control any actions, including any exclusions or disciplinary actions, taken by other agencies, state or federal.

14.

The defendant acknowledges that there is no agreement with the United States as to the actual sentence that will be imposed by the Court as a result of this Plea Agreement and acknowledges that no promises or assurances have been made to him as to what the sentence will be. The defendant acknowledges that the terms herein constitute the entire agreement and that no other promises or inducements have been made. The defendant acknowledges that he has not been threatened, intimidated, or coerced in any manner.

8

15.

The defendant acknowledges that this Plea Agreement has been entered into knowingly, voluntarily, and with the advice of counsel, and that he fully understands the agreement.  The defendant has no objection to the legal representation he has received.

This Plea Agreement is entered into this ____ 13th ____ day of May, 2014, in Baton Rouge, Louisiana.

UNITED STATES OF AMERICA, by

_____
ZAHID IMRAN, M.D.
DEFENDANT

_____
J. WALTER GREEN, LBN 27812
UNITED STATES ATTORNEY

_____
JASON ROGERS WILLIAMS
ATTORNEY FOR DEFENDANT
607 St. Charles Ave., Suite 300
New Orleans, Louisiana 70130
Telephone: (504) 585-1413

_____
ABIGAIL B. TAYLOR
DUSTIN M. DAVIS
Trial Attorneys
United States Department of Justice
Criminal Division, Fraud Section
Telephone: (202) 669-7505

_____
NICOLE E. BURDETT
ATTORNEY FOR DEFENDANT
607 St. Charles Ave., Suite 300
New Orleans, Louisiana 70130
Telephone: (504) 585-1413

_____
SHUBHRA SHIVPURI
ALAN A. STEVENS
M. PATRICIA JONES
Assistant United States Attorneys
Middle District of Louisiana
Telephone: (225) 389-0443

9